JUAN PORTILLO, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. [922 NYS2d 397]—

Order, Supreme Court, New York County (Harold B. Beeler, J.), entered August 10, 2009, which granted defendant's motion to dismiss the complaint on the ground of a deficient notice of claim, unanimously reversed, on the law, without costs, the motion denied, and the complaint reinstated.

Plaintiff was injured when his leg got caught in the gap between a subway car and the platform at the Union Square Station. Allegedly, the press of passengers exiting the car caused him to release his grip on the pole he had been holding, and be pushed out the door. Although plaintiff filed a timely notice of claim, defendant moved to dismiss the complaint on the ground, in part, that the notice of claim was defective for failing to specify the exact location of the accident.

A notice of claim must set forth, among other things, the time and place of an accident and the manner in which it occurred (General Municipal Law § 50-e [2]). This statutory requirement

is designed to enable the governmental entity involved to obtain sufficient information to promptly investigate, collect evidence, evaluate the merit of the claim, and assess the municipality's exposure to liability (*Brown v City of New York*, 95 NY2d 389 [2000]). In considering the sufficiency of a notice of claim in the context of a motion to dismiss, a court is not confined to the notice of claim itself, but may also look to evidence adduced at a General Municipal Law § 50-h hearing, and to such other evidence that is properly before the court (*D'Alessandro v New York City Tr. Auth.*, 83 NY2d 891 [1994]).

Plaintiff reported his accident to defendant on the day it occurred, providing the train line that he was on, the station where the accident occurred, and the time at which the accident took place. He provided enough information for defendant to identify the train in which he was a passenger and to inspect the train on the same day as the accident. In addition, based on plaintiff's testimony at the section 50-h hearing, defendant was able to determine that plaintiff was riding in one of three cars out of 10 cars on that particular train. Thus, even if the information provided in the notice of claim was not sufficient, the additional evidence provided by plaintiff satisfied the requirements of the notice of claim and permitted defendant to promptly investigate, collect evidence and evaluate the claim.

Defendant also moved for dismissal of the complaint pursuant to CPLR 3212, arguing that the gap between the train and the platform was within permissible limits. In support of its motion, defendant submitted an internal memorandum which states that the tolerance for platform gaps on "tangent track" or straight track is six inches. The memorandum further states that this "do[es] not apply to curves which must be large enough to assure adequate moving car clearance." Defendant also submitted gap measurements routinely taken in October 2006, approximately three months prior to plaintiff's accident, as well as testimony from a civil engineer employed by defendant who stated that the measurements would not have changed in those three months. The measurements establish that the gap was greater than six inches in certain areas where the track is curved. Defendant argues that based on the information provided by plaintiff, he was riding in car four, five or six. According to the measurements taken prior to the accident, none of those cars stop on the curved part of the track at the station. Noticeably absent from defendant's submission is any information regarding whether the trains always stop at the same position. In opposition to defendant's motion, plaintiff asserted in a sworn affidavit that the gap was "well over one foot wide" and

was large enough to accommodate his "entire foot" and "leg up to the thigh." This factual assertion also creates a material issue of fact on the question of whether the car plaintiff was riding in stopped on curved or tangent track. Moreover, assuming it stopped on curved track, there is no evidence regarding the size of the gap that is permissible.

Also absent from the record are any measurements taken after the accident which could establish that there was no change in the size of the gap between October 2006 and January 2007. For this reason and because of plaintiff's assertions regarding the size of the gap, there is a question of fact regarding its size at the time of plaintiff's accident even assuming the car stopped on tangent track. Concur—Mazzarelli, J.P., Saxe, McGuire, Freedman and Abdus-Salaam, JJ. [**Prior Case History: 24 Misc 3d 1227(A), 2009 NY Slip Op 51645(U).**]